| | |
|---|---|
| John A. Yanchunis (Pro Hac Vice to be filed) | Steven W. Teppler (Pro Hac Vice to be filed) |
| Patrick A. Barthle II (Pro Hac Vice to be filed) | Fla. Bar No. 14787 |
| **MORGAN & MORGAN COMPLEX LITIGATION GROUP** | steppler@abbottlawpa.com |
| 201 N. Franklin Street, 7th Floor | **ABBOTT LAW GROUP, P.A.** |
| Tampa, Florida 33602 | 2929 Plummer Cove Road |
| Telephone: 813/223-5505 | Jacksonville, FL 32223 |
| 813/223-5402 (fax) | T: 904.292.1111 |
| *jyanchunis@ForThePeople.com* | F: 904.292.1220 |
| *pbarthle@ForThePeople.com* | |

Clayeo C. Arnold, California SBN 65070
Email: carnold@justice4you.com
Joshua H. Watson, California SBN 238058
Email: jwatson@justice4you.com
**CLAYEO C. ARNOLD, A PROFESSIONAL LAW CORPORATION**
865 Howe Avenue
Sacramento, California 95825
916-777-7777 Telephone
916-924-1829 Facsimile

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA RENKEN and SEAN MANNION, individually and on behalf of all others similarly situated, | CASE NO. |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| Facebook, Inc., | |
| Defendants. | |

Plaintiffs LISA RENKEN and SEAN MANNION, individually and on behalf all others similarly situated, allege the following against Defendant Facebook, Inc. ("Facebook" or "Defendant"), based on personal knowledge as to Plaintiffs and Plaintiffs' own acts and on information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through Plaintiffs' undersigned counsel:

## SUMMARY OF THE CASE

1. Facebook operates a social networking website that allows people to communicate with their family, friends, and coworkers. Facebook develops technologies that facilitate the sharing of information, photographs, website links, and videos. Facebook users have the ability to share and restrict information based on their own specific criteria. By the end of 2017, Facebook had more than 2.2 billion active users. The company's stated mission is "to give people the power to build community and bring the world closer together. People use Facebook to stay connected with friends and family, to discover what's going on in the world, and to share and express what matters to them." In recent years, however, Facebook's stated business model has in actuality morphed into a data aggregation and marketing machine disguised as a social network.

2. Facebook provides multiple mechanisms through which users may access its social media product. These include but are not limited to a website accessed through a computer's web browser, Facebook mobile device applications available on various operating systems (e.g. Android, iOS), and auxiliary applications such as Facebook Messenger for mobile devices.

3. Facebook's marketing of its mobile device applications has led many Facebook users to install its applications on their cell phones.

4. When installing such applications, Facebook users are provided with a terms of service and/or privacy notice on the screen of their mobile device. These essentially inform users that the information they post to Facebook will be used by the company in accordance with the users' privacy settings as specified by the user. The terms of service and privacy notice materials *do not* inform (and in the past have not informed) the ordinary and

reasonably attentive Facebook user that installing the application on a cell phone will result in the logging of all the user's phone and text communications (including recipients, dates of communication, length of communication, and mode of communication) on Facebook's servers for Facebook's own use.

5. In the Android versions of Facebook's mobile application, Facebook has collected and stored information in a scope and manner beyond that which users knowingly authorized; the practice is ongoing.  This activity includes accessing users' call and text histories, including metadata such as the names and numbers of persons contacted, the times of such contacts, and the lengths of such contacts, hereafter referred to as "Personal Communications Information."

6. Users' Personal Communications Information has been and continues to be stored to Facebook's own servers.

7. Prior to about 2017, the Android operating system for mobile devices allowed Facebook applications to obtain users' Personal Communications Information without fully disclosing that the applications would access all of the Personal Communications Information and send it to Facebook's private services for storage.  Facebook took advantage of this technical structure of the Android operating system to obtain users' Personal Communications Information with misleadingly minimal and insufficient notice such that ordinary Facebook users did not understand that they were allowing Facebook the ability to download, save, and utilize their Personal Communications Information.

8. Later versions of the Android operating system, beginning in or about 2017, required additional notice by Facebook applications to obtain this information.  Even then, Facebook did not take steps to make it plain to ordinary and reasonably attentive users that their Personal Communications Information had been and would continue to be gathered, stored, and used by Facebook.  Instead, ordinary and reasonably attentive Facebook users understood only that their posts and communications activity on the Facebook website would be published in keeping with their accounts' privacy settings.

9. Facebook's unauthorized taking and use of its users' Personal

Communications Information presents several wrongs, including a consumer bait-and-switch, an invasion of privacy, wrongful monitoring of minors, and an attack on privileged communications in the context of Facebook users who use their cell phones (but not Facebook) to communicate in the context of protected relationships including but not limited to that of attorney/client, doctor/patient, etc.  The policy also affects the rights of minors.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendant.  The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper under 28 U.S.C. § 1391(c) because Defendant is a corporation that does business in and is subject to personal jurisdiction in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claims in this action occurred in or emanated from this District, and because Facebook's terms of service document calls for litigation between users and the company to be governed by California law and provides for litigation of related disputes in this District.

## PARTIES

**A.     Class Representatives**

12.      Plaintiff Lisa Renken is a citizen and resident of California.  She has held a Facebook account for a time in excess of the applicable statute of limitations for this matter.

13.     Plaintiff Sean Mannion is a citizen and resident of California.  He has held a Facebook account for a time in excess of the applicable statute of limitations for this matter.

**B.     Defendants**

14.     Defendant Facebook, Inc. is incorporated in Delaware, and the Company's principal executive offices are located at 1601 Willow Road, Menlo Park, California 94025. Facebook's securities trade on the NASDAQ under the ticker symbol "FB."

## FACTUAL BACKGROUND

15. On March 24, 2018, ArsTechnica.com, a respected online source for technology news, published an article detailing that Facebook "scraped call, text message data for years from Android phones. (https://arstechnica.com/information-technology/2018/03/facebook-scraped-call-text-message-data-for-years-from-android-phones/) As set forth in the article, Facebook's Android-based application for accessing its services included functions that would collect the phone numbers to which a user's phone connected, whether via voice call or text. The Facebook phone application transmitted to Facebook's corporate servers information about each such communication on the subject phone, including but not necessarily limited to: the phone numbers and identities of the persons taking part in communications, the date and time of communications, and the length of communications.

16. Such data collection was set as part of the default installation of the Facebook application, such that users had to take affirmative action to prevent their phones from being subject to such monitoring and reporting. Coupled with this, Facebook also did not provide notice of such monitoring and reporting in a way that ordinary and reasonably attentive users would understand. This resulted in a vast number of Facebook users being duped into participating in a monitoring system that they would not have agreed to had they first been told in plain language what data was being collected, and what was being done with it.

17. By utilizing such data collection methods, Facebook has been able to amass a set of data matching people to their phone numbers, but also matching people to one another. By matching the phone numbers to other information, knowable by Facebook.com posts and other available information, Facebook can map relationships and, to a degree, the nature and type of relationships between affected Android users. Ordinary and reasonably attentive Facebook users, including Plaintiffs and class members, were not given enough information to knowingly opt into such a data collection program, and would not have done so if they had first been informed of the system in ordinary language.

18. To the degree Facebook did disclose its system of gathering Personal

Communications Information, it did so through subterfuge and using language that did not put users on notice of what was actually being done by the company.  For instance, Facebook explained in or about 2016-2017 that it collected data "to help friends find each other."

19. Millions of individuals use Facebook through their Android-based phones.

20. On many Android phones, Facebook is installed as a default application, and cannot be removed by individuals who purchased the phone, even if they would not otherwise choose to opt into the Facebook's system of collecting and storing users' Personal Communications Information.

21. In 2011, Facebook entered into a consent decree with the U.S. Federal Trade Commission ("FTC") in which the company agreed to obtain user consent for certain changes to privacy settings.  The decree arose from federal allegations that the company deceived consumers and forced them to share more personal information than they intended.  Yet, Facebook still continued in its policy of collecting Personal Communications Information as alleged herein, reflecting an ongoing intent to deceive and take advantage of Facebook users.

22. Such conduct was in violation of Facebook's own Data Use Policy on its website, which provided at all relevant times in part:

> Granting us permission to use your information not only allows us to provide Facebook as it exists today, but it also allows us to provide you with innovative features and services we develop in the future that use the information we receive about you in new ways. While you are allowing us to use the information we receive about you, you always own all of your information. ***Your trust is important to us, which is why we don't share information we receive about you with others unless we have:***
> - ***received your permission***
> - ***given you notice**, such as by telling you about it in this policy; or*
> - removed your name and any other personally identifying information from it.

(Emphases added) (https://www.facebook.com/full_data_use_policy).

23. The policy of collecting and using Personal Communications Information as alleged herein has violated the privacy of millions of people in every state.

24. The terms of service agreement between Facebook and its users specifies that

California law governs the relationship between Facebook and its users. For that reason, the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.) and the Consumer Legal Remedies Act (Cal. Civil Code §1750 et seq.) apply to all class members.

## CLASS ACTION ALLEGATIONS

25. Pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of themselves and as a class action on behalf of the following class:

> All persons who registered for Facebook accounts in the United States and whose Personal Communication Information was obtained from Facebook via cell phone applications.

26. Excluded from the Class are Defendants and any entities in which any Defendant or their subsidiaries or affiliates have a controlling interest, and Defendants' officers, agents, and employees. Also excluded from the Class are the judge assigned to this action, and any member of the judge's immediate family.

27. **Numerosity:** The members of each Class are so numerous that joinder of all members of any Class would be impracticable. Plaintiff reasonably believes that Class members number fifty (50) million people or more in the aggregate and well over 1,000 in the smallest of the classes. The names, addresses, and phone numbers of Class members are identifiable through documents maintained by Defendants.

28. **Commonality and Predominance:** This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including:

   i.  Whether Facebook gave Plaintiffs and Class members effective notice of its program to collect their Personal Communications Information;

   ii. Whether Facebook obtained consent from Plaintiffs and Class members to collect their Personal Communications Information;

   iii. Whether Facebook improperly collected Plaintiffs' and Class members' Personal Communications Information;

      iv.    Whether Facebook owes any duty to Plaintiffs and Class members with respect to maintaining, securing, or deleting their Personal Communications Information;

      v.    To what degree Facebook has the right to use Personal Communications Information pertaining to Plaintiffs and Class members;

      vi.    Whether Facebook owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

      vii.    Whether Facebook breached a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

      viii.    Whether Facebook's conduct violated Cal. Civ. Code § 1750, *et seq.*;

      ix.    Whether Facebook's conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

      x.    Whether Defendants' conduct violated § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, *et seq.*,

      xi.    Whether Plaintiff and the Class are entitled to equitable relief, including, but not limited to, injunctive relief and restitution/disgorgement; and

      xii.    Whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

29.    Facebook engaged in a course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the members of the class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that dominate this action.

30.    **Typicality:** Plaintiffs' claims are typical of the claims of the other members of their respective classes because, among other things, Plaintiffs and the other class members were injured through the substantially uniform misconduct by Defendants.  Plaintiffs are

advancing the same claims and legal theories on behalf of herself and all other Class members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of other Class members arise from the same operative facts and are based on the same legal theories.

31. **Adequacy of Representation:** Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the other Class members they seeks to represent; they have retained counsel competent and experienced in complex class action litigation and Plaintiffs will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

32. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and the other members of their respective classes are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Facebook, making it impracticable for Class members to individually seek redress for Facebook's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

33. Further, Facebook has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

34. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of

which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

    a. Whether Facebook gave Plaintiffs and Class members effective notice of its program to collect their Personal Communications Information;

    b. Whether Facebook obtained consent from Plaintiffs and Class members to collect their Personal Communications Information;

    c. Whether Facebook improperly collected Plaintiffs and Class members Personal Communications Information;

    d. Whether Facebook owes any duty to Plaintiffs and Class members with respect to maintaining, securing, or deleting their Personal Communications Information;

    e. To what degree Facebook has the right to use Personal Communications Information pertaining to Plaintiffs and Class members;

    f. Whether Facebook owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

    g. Whether Facebook breached a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

    h. Whether Facebook's conduct violated Cal. Civ. Code § 1750, et seq.;

    i. Whether Facebook's conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, et seq.;

    j. Whether Facebook's conduct violated § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, et seq.,

    k. Whether Plaintiffs and the Class are entitled to equitable relief, including, but not limited to, injunctive relief and restitution/disgorgement; and

    l. Whether Plaintiffs and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

  m. Whether Facebook's acts, omissions, misrepresentations, and practices were and are likely to deceive consumers;

  n. Whether Facebook's conduct violated Cal. Bus. & Prof. Code § 22575, *et seq.*;

  o. Whether Facebook failed to adhere to its posted privacy policy concerning the care it would take to safeguard Plaintiffs' and Class members' Personal Communication Information in violation of California Business and Professions Code § 22576;

  p. Whether Facebook negligently and materially failed to adhere to its posted privacy policy with respect to the extent of their collection, use, and resulting disclosure of users' data, in violation of California Business and Professions Code § 22576;

### CLAIMS ALLEGED ON BEHALF OF ALL CLASSES

### First Claim for Relief

### Violation of California's Unfair Competition Law ("UCL") – Unlawful Business Practice

### (Cal. Bus. & Prof. Code § 17200, *et seq*.)

35. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 34 as though fully stated herein.

36. By reason of the conduct alleged herein, Facebook engaged in unlawful practices within the meaning of the UCL. The conduct alleged herein is a "business practice" within the meaning of the UCL.

37. Facebook represented that it would provide consumers with online social media services, yet failed to disclose that in so doing, it would surreptitiously collect Personal Communications Information. In so doing, Facebook violated its own terms of service and ostensible privacy policies, misled consumers about the benefits of the transaction, mischaracterized the reason for discounted social media services, and improperly accessed users' personal and private communications.

38. Facebook's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), Cal. Bus. & Prof. Code § 22575 et seq (as a result of Facebook failing to comply with its own posted policies), and Cal. Consumer Legal Remedies Act [Cal. Civil Code 1750, et seq.] (as alleged herein); 18 USC § 2511 et seq (federal wiretapping statute); Cal. Penal Code § 632 (state wiretapping statute).

39. Plaintiff and the Class members suffered injury in fact and lost money or property as the result of Facebook's unlawful business practices.

40. As a result of Facebook's unlawful business practices, Plaintiff and the class are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief.

## Second Claim for Relief

**Violation of California's Unfair Competition Law ("UCL") – Unfair Business Practice**

**(Cal. Bus. & Prof. Code § 17200, *et seq*.)**

41. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 34 as though fully stated herein.

42. By reason of the conduct alleged herein, Facebook engaged in unfair "business practices" within the meaning of the UCL. Such conduct is without reasonable utility and is tethered to statutory obligations as pled above.

43. As a result of Facebook's unfair business practices, violations of the UCL, Plaintiff and the Class are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief.

## Third Claim for Relief

**Violation of California's Consumer Legal Remedies Act ("CLRA")**

**(Cal. Bus. & Prof. Code § 17200, *et seq*.)**

44. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 34 as though fully stated herein.

45. Facebook is a person within the meaning of CLRA in that it is a corporation.

46. Plaintiffs and Class members are consumers within the meaning of CLRA in

that they are individuals who seek or acquire services for personal, family, or household purposes. Consideration is exchanged through Facebook providing services and users of its service accepting the boundaries of the terms of service, accepting the privacy policy, and allowing Facebook to utilize that information to which users have knowingly given access.

47. The conduct of Facebook as alleged herein violates CLRA's ban on proscribed practices at Civil Code § 1770(a) in that, among other things:

   a. Facebook misrepresents the characteristics and benefits of the service by not disclosing, and actively obscuring, that Facebook uses its service as a mechanism to obtain Personal Communications Information without knowing consent;

   b. Facebook advertises its services with the intent not to provide them as advertised, including with respect to compliance with its terms of service.

48. As a direct and proximate result of Facebook's conduct, Plaintiffs and Class members suffered injury and attendant damages.

49. Plaintiffs and the Class seek equitable relief for Facebook's violation of CLRA, as permitted by statute.  This includes injunctive relief to enjoin the wrongful practices alleged herein, and to take corrective action to remedy past conduct such as, among other things, deleting the wrongfully obtained Personal Communications Information.  This also includes restitution and/or disgorgement as permitted by law, as well as statutory attorney fees.

50. Plaintiffs and Class members reserve the right to give written notice of this claim via certified mail per statute, and to thereafter seek damages via amended complaint.

**Fourth Claim for Relief**

**Breach of Contract**

51. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 34 as though fully stated herein.

52. A contract existed at all relevant times between Facebook, and the Class members, including Plaintiffs.  Under the terms of the contract, Facebook's consideration to

Plaintiffs and the Class members was access to Facebook's online social media system; Plaintiffs and Class members' consideration was agreement to the terms and conditions of the site and resulting performance, acceptance of its privacy policy, and permission for Facebook to use their personal information for business purposes to the degree Plaintiffs and Class members provided express permission.

53.   Plaintiffs and Class members performed all their duties under the contract.

54.   Facebook thereafter breached the agreement as alleged herein with respect to collecting and using Personal Communications Information.

55.   As a direct and proximate result, Plaintiffs and Class members suffered injury and attendant damages.

56.   Plaintiffs and Class members further seek specific performance of the stated contract with respect to Personal Communications Information.

### Fifth Claim for Relief

### Intrusion Into Private Affairs

57.   Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 34 as though fully stated herein.

58.   Plaintiffs and the Class members had a reasonable expectation of privacy in their cell phones, the data on their mobile devices, their call histories, their messaging histories, and their network of contacts, and their Personal Communications Information.

59.   Facebook intentionally intruded into the privacy of the Plaintiffs and the Class members with respect to their mobile devices as alleged herein.

60.   Such intrusion was offensive to the Plaintiffs and the Class members, and would be to a reasonable person.

61.   As a direct and proximate result of Facebook's conduct, Plaintiffs and the Class members were harmed and suffered attendant damages.

62.   In the alternative, Plaintiffs and the Class members seek nominal damages.

**Sixth Claim for Relief**

**Violation of Cal. Penal Code §§ 632, 637.2**

63. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 34 as though fully stated herein.

64. Facebook intentionally intercepted and recorded the recipient, dates, times, and content-length indicators of Plaintiffs and the Class members by using an electronic device (i.e. the affected users' mobile devices as modified by Facebook's application(s)).

65. Plaintiffs and the Class members had a reasonable expectation of privacy in their cell phones, the data on their mobile devices, their call histories, their messaging histories, their network of contacts, and their Personal Communications Information; such expectation extended to a reasonable expectation that these elements of their communications were not being overheard or recorded.

66. Facebook did not have the consent of all parties to the communications to record information as alleged herein.

67. As a direct and proximate result of Facebook's conduct, Plaintiffs and the Class members were harmed and suffered attendant damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that this Court enter an Order:

(a) Certifying the United States Class and appointing Plaintiffs as Class Representatives;

(b) Finding that Facebook's conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

(c) Enjoining Facebook from engaging in further negligent, deceptive, unfair, and unlawful business practices alleged herein;

(d) Awarding Plaintiffs and the Class members nominal, actual, compensatory, and consequential damages;

(e) Awarding Plaintiffs and the Class members statutory damages and penalties, as allowed by law;

(f) Awarding Plaintiffs and the Class members restitution and disgorgement;

(g) Awarding Plaintiffs and the Class members pre-judgment and post-judgment interest;

(h) Awarding Plaintiffs and the Class members specific performance;

(i) Awarding Plaintiffs and the Class members reasonable attorneys' fees costs and expenses, and;

(j) Granting such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: March 27, 2018

/s/ *Joshua H. Watson*
Joshua H. Watson

*Attorney for Plaintiffs and the Class*